UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 15-10347-PBS |
| | ) | |
| VINCENT C. ANZALONE | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Vincent Anzalone, respectfully submits this Memorandum in aid of sentencing after admitting to possessing and receiving child pornography over the internet in violation of 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 2252A(a)(2)(A).  Anzalone submits that a sentence of 60 months in prison followed by 60 months of supervised release is warranted. The recommended sentence is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) under the circumstances of this case, which include: (1) defendant's immediate acceptance of responsibility and remorse; (2) the low risk of recidivism or danger posed by the defendant; and (3) avoiding unwarranted disparity with similarly-situated defendants.

I.      THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

The circumstances of the Anzalone's offense have been thoroughly documented during the extensive pretrial litigation as well as in the Presentence Report. Like several thousand other individuals, Anzalone came to the attention of the FBI when he logged onto and browsed Playpen, a website that the FBI was then operating, which provided links to child pornography. Anzalone was not a longtime participant, having only joined the website the day before it was seized by the FBI.

Using Anzalone's Playpen activities as probable cause, agents on executed a search warrant at defendant's residence on October 21, 2015 and found child pornography on his computer.  Agents interviewed defendant who almost immediately admitted downloading and possessing large amounts of child pornography and directed agents to where it could be found.

Anzalone is one of at least 214 prosecutions nationwide arising out of the FBI's operation of the Playpen site.

II.   <u>ANZALONE'S HISTORY AND CHARACTERISTICS</u>

Defendant is 44 years old, having been born in Melrose, MA but raised in East Boston and New Hampshire. His father was strict disciplinarian and struggled with alcoholism during Anzalone's early life. The family's move to New Hampshire and a new high school environment was traumatic for Anzalone, who was picked on a bullied during his high school years. He suffers from dyslexia.

Anzalone graduated high school in 1991. He enlisted in the U.S. Navy and was stationed in the Pacific theater, primarily in Japan. After his honorable discharge in 1994, he divided his time between Brighton and New Hampshire working at auto parts stores and car dealerships. The restructuring of the auto industry after its collapse in the wake of the 2008 financial crisis left him unemployed. He returned to Boston, where he retrained for the Information Technology industry by taking a series of certificate courses at Bunker Hill Community College. His new found skills landed him a job with a temporary services company that eventually ripened into a full-time position with Partner's Health Care as a Computer Systems Administrator earning $26 per hour.

Anzalone has been in a ten-year monogamous relationship with Susan Hague. The couple have known each other since their teenage years in New Hampshire and became romantically reacquainted after the end of her marriage, which produced three children. While Anzalone and Hague have no children of their own, Anzalone of his accord took on the role of financial and emotional supporter of the family and has been the primary father figure for Hague's children. As Hague reported to the Probation Office and has eloquently written in her letter of support, Anzalone's appearance in her and her children's lives during a tumultuous and vulnerable period has been instrumental in raising her family.

And it is not only Hague who attests to Anzalone's loyalty kindness, and support of others. In their letters of support, attached hereto as Exhibit A, his close family uniformly describe Anzalone as caring, intelligent, and deeply devoted to his family and serving his country.

III.    THE SENTENCING GUIDELINES AND THE RECOMMENDATION OF THE
        PARTIES

The parties' plea agreement calculates the guideline range as either 97-121 months (the defendant's view) or 121-151 months (the government's view). In addition, the government has agreed to recommend a sentence that is a discount from the advisory guideline sentencing range. The Probation Department, on the other hand, agrees with defendant's calculation of the guideline range but recommends a five-level enhancement for a so-called "pattern of abuse." The following chart summarizes the guideline calculation with the relevant disputes highlighted:

| GUIDELINE PROVISION | GOVERNMENT CALCULATION | DEFENDANT CALCULATION | PROBATION CALCULATION |
|---|---|---|---|
| BOL (§ 2G2.2(a)(2)) | 22 | 22 | 22 |
| No Distribution (reduction)(§ 2G2.2(b)(1)) | 0 | -2 | -2 |
| Prepubescent Minor (§ 2G2.2(b)(2)) | 2 | 2 | 2 |
| Sadistic/Masochistic (§ 2G2.2(b)(4)) | 4 | 4 | 4 |
| Pattern of Abuse ((2G2.2(b)(5)) | 0 | 0 | 5 |
| Use of Computer (§ 2G2.2(b)(6)) | 2 | 2 | 2 |
| >600 Images (§ 2G2.2(b)(7)) | 5 | 5 | 5 |
| Acceptance (reduction) | -3 | -3 | -3 |
| Total | 32 | 30 | 35 |
| Guideline Sentencing Range | 121-151 | 97-121 | 168-210 |
| Recommendation | >97 | 60 | n/a |
| Discount | 20% | 38% | n/a |

The plea agreement contemplates that notwithstanding the calculated guideline sentencing range the government will recommend incarceration for a period of 97 months, while defendant will recommend incarceration for a period of 60 months (the mandatory minimum term). As set forth in the above chart and below, defendant submits that the Probation Department is correct in its analysis that Anzalone should receive a two-level reduction because the offense did not involve distribution. The defendant and the government submit that the Probation Department's analysis regarding pattern of abuse is incorrect.

A. There Is No Evidence of Distribution

U.S.S.G. § 2G2.2(b)(1) provides that if the defendant's conduct was limited to the receipt or solicitation of child pornography and the defendant did not intend to traffic in, or distribute, such material, a two-level decrease is warranted. Although the government reserved the right to contest this reduction in the plea agreement, it has offered no evidence of distribution or intent to distribute to explain why the reduction should not be included in the calculation. Indeed, defendant specifically denied distribution when admitting to his interest in downloading child pornography to investigators.

Because there is no evidence before the Court indicating distribution, the Court should apply the reduction.

B.  The Pattern of Abuse Enhancement Is Inapplicable



REDACTED PER D.E. 120

REDACTED PER D.E. 120

REDACTED PER D.E. 120

REDACTED PER D.E. 120

Without the disputed enhancements, Anzalone's Total Offense Level 30 and the resulting guideline sentencing range is 97-151 months. But, as explained below, even this lower guideline range results in a sentence that is unreasonably high.

## IV.  THE EVOLUTION OF U.S.S.G. §§ 2G2.1 AND 2G2.2

Since the promulgation of the guideline for distribution of child pornography, the offense level applicable to Anzalone's conduct after acceptance of responsibility has risen by 21 levels, from 13 to 34, and the applicable range has risen from 12-18 months to 151-188 months, an increase of more than 1000%, as demonstrated in the following table:

**Effect on Defendant's Guideline Range Over Time**

| Guideline Version | Applicable Guideline Section | Offense Level Calculation | Guideline Sentencing Range |
|---|---|---|---|
| **Original Guideline (1987)** | § 2G2.2 | 13 Base Offense Level<br><br>+2 Prepubescent minor<br><br>-2 Acceptance of responsibility<br><br>**13** | **12-18 months** |
| **1991 Guidelines** | § 2G2.2 | 13 Base Offense Level<br><br>+2 Prepubescent minor<br><br>+4 Sadistic or masochistic material<br><br>-2 Acceptance of responsibility<br><br>**17** | **24-30 months** |
| **1996 Guidelines** | § 2G2.2 | 17 Base Offense Level<br><br>+2 Prepubescent minor<br><br>+4 Sadistic or masochistic material<br><br>+2 Use of computer<br><br>-3 Acceptance of responsibility<br><br>**22** | **41-51 months** |

| 2003 Guidelines | § 2G2.2 | 17 Base Offense Level | 87-108 months |
| --- | --- | --- | --- |
| | | +2 Prepubescent minor | |
| | | +4 Sadistic or masochistic material | |
| | | +2 Use of computer | |
| | | +5 Number of images (more than 600) | |
| | | <u>-3</u> Acceptance of responsibility | |
| | | **29** | |
| **2004 Guidelines** | § 2G2.2 | 22 Base Offense Level | **151-188 months** |
| | | +2 Prepubescent minor | |
| | | +4 Sadistic or masochistic material | |
| | | +2 Use of computer | |
| | | +5 Number of images (more than 600) | |
| | | <u>-3</u> Acceptance of responsibility | |
| | | **32** | |

Most of this extraordinary increase was mandated by Congress, sometimes over the opposition of

the Commission itself. *United States v. Dorvee*, 616 F.3d 174, 184-85 (2nd Cir. 2010).  In

*Kimbrough*, the Supreme Court addressed the crack guidelines, which were not directly

mandated by Congress but which the Commission based on congressional policy, and refuted

Congress's reasons for its policy.  *Kimbrough v. United States*, 552 U.S. 85, 94-99 (U.S. 2007).

Likewise, Congress, in dictating much of the content of § 2G2.2, relied on assumptions that more

recent research and data no longer support.  *Cf.* 552 U.S. at 97.  It is legitimate to note that the

sentencing of child pornography offenders has been politicized to a degree not present in other

cases.  Sometimes this is framed as decision-making based on moral judgments, rather than careful empirical analysis.  See Excerpt Transcript of Sentencing at 5, *United States v. Bhavsar*, Criminal No. 10-40018-FDS, ECF No. 56.

Perhaps no other guideline has been so roundly criticized by the courts.  The Second Circuit has been particularly powerful in its condemnation. It described the child pornography guideline as "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results."  <u>Dorvee</u>, 616 F.3d at 188.  The <u>Dorvee</u> Court further analyzed how the mechanical application of the child pornography guidelines was "fundamentally incompatible with § 3553(a)."  *Id.* at 187. Specifically, the Court addressed the dizzying array of enhancements that apply in almost every case.  The frequency of certain enhancements in the child pornography guideline was also pointed out in the Sentencing Commission's December 2012 report to Congress.  <u>See</u> U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses at 5, 209 (2012) (available at

http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf)

["Commission Report"].  The Commission found that in non-production cases, several of the sentencing enhancements applied in the vast majority of § 2G2.2 cases:

**FY10 Application Rates of Enhancements in §2G2.2**

| All §2G2.2 Cases | All §2G2.2 Cases<br><br>N = 1654 | Possession<br><br>N = 874 | Receipt<br><br>N = 428 |
|---|---|---|---|
| P/P/M | 96.3% | 95.4% | 97.4% |
| S/M | 74.2% | 68.1% | 80.1% |
| Distribution | 41.6% | 26.8% | 33.9% |
| Use of Computer | 96.3% | 95.8% | 96.0% |
| Number of Images | 96.9% | 94.6% | 98.4% |
| Pattern of Activity | 10.2% | 7.3% | 13.3% |

The sentencing guidelines characterize these enhancements as "Specific Offense Characteristics." As the Court in *Dorvee* points out, however, they are anything but specific, in that they apply to almost all convictions under the guideline. *Dorvee*, 616 F.3d at 186 (noting that application of these enhancements "that are all but inherent to the crime of conviction" results in a "13 level [increase], resulting in a typical total offense level of 35").

Last week, the Second Circuit made explicit what has been implicit in sentencing courts' widespread abandonment of § 2G2.2 enhancements: mechanical application of these enhancements, even where they factually apply, will lead to a sentence that is substantively unreasonable. *United States v. Jenkins,* --- F.3d. ---, 2017 WL 1371399 (2d Cir, April 17, 2017). In *Jenkins*, the district court followed § 2G2.2 to arrive at a guideline sentencing range of 210-262 months' imprisonment and sentenced the defendant to 225 months, a sentence within the

range. *Id.* at *2-3. Relying on *Dorvee* and the Commission's later 2012 child pornography report and recent statistics, the panel majority held that a sentence within the guideline range under § 2G2.2 - derived from "all-but-inherent" and "outdated" enhancements - unreasonably treated Jenkins as "the worst of the worst." As the panel put it: "Since the Commission has effectively disavowed § 2G2.2, it should be clearer to a district court than when we decided *Dorvee* that this Guideline 'can easily generate unreasonable results.'" It concluded that, by imposing a within-guideline sentence on Jenkins, a first-time offender who had no contact with children or engaged in any actual aggravating offense-related conduct, the district judge "went far overboard."

Like Anzalone in the instant matter, the crux of Jenkins's offense was possession, and it was the conviction for transportation of child pornography – in Anzalone's case "receipt" of child of pornography – that escalated the statutory maximum beyond the ten years that would otherwise apply. But Jenkins was only traveling with the material for his personal use during a vacation, not for distribution to others. Looking to statistics in the Commission's 2012 report, the panel recognized that Jenkins was less culpable than most transportation offenders, yet got a sentence near the stat max. Citing the parsimony clause, the court stated that "[d]istrict courts should generally reserve sentences near the statutory maximum for the worst offenders."

The Second Circuit's decision is remarkable for its thoroughness. It relies, for example, on the Commission's available sentencing statistics for its holding, in particular by breaking down sentences for possession-only offenders who were not convicted of receipt and received no distribution enhancement). *Id.* at *9, citing *U.S. Sentencing Comm'n, Report to the Congress: Federal Child Pornography Offenses*, *supra*, at p. 215 fig. 8.3. Particularly relevant to Anzalone's sentencing is the *Jenkins* court's observation that

> Among these [possession-only] offenders, the mean sentence was 52 months and
> the highest was 97 months. USSC Report 215 fig.8.3. Admittedly, these

offenders, unlike Jenkins, accepted responsibility and did not all engage in misconduct during their criminal proceedings. Nonetheless, we see no reasonable justification on the record as to why he should receive *128* months above the longest sentence in this category and *173* months above the mean among possessors with the four all-but-inherent enhancements.

*Id.* (emphasis in original).

As in *Jenkins*, the enhancements that facially apply to Anzalone, and virtually every other defendant that is the subject of § 2G2.2, call for a sentence tipping toward the statutory maximum. Anzalone, *unlike* the defendant in Jenkins, immediately fully accepted responsibility and has engaged in absolutely nothing similar to the kinds of misconduct Jenkins engaged that might justify any escalation beyond the mean sentence of 52 months.

Indeed, without the 13 points in enhancements, Anzalone's guideline range would be offense level 22, minus 2 because he did not distribute, and minus 3 for acceptance. At an offense level of 17, his guideline sentencing range would be 24-30 months.  Such a sentence would better approximate the appropriate punishment. The government's decision to charge receipt of child pornography, with its five-year mandatory minimum notwithstanding lack of distribution by Anzalone, cabins the Court's discretion at 60 months. In these circumstances, a sentence is patently sufficient to achieve § 3553(a)'s goals.

## V.  THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES

This Court can evaluate disparity, first, by evaluating recent sentences by judges in this District, including by this Court, and second, by consideration of sentences meted out to other defendants across the country ensnared by the FBI's operation of the Playpen website.

Every session in the District of Massachusetts to address the child pornography guidelines has given them limited weight and, in the appropriate case, almost no weight.  *See, e.g., United States v. Mark Rita*, 12-CR-10045-MLW (accessing child pornography, 70-87

month guideline range, sentenced to five years' probation); *United States v. Kevin Andre*, 13-CR-10267-DPW (possession of child pornography, guideline range of 97-120 months, government recommendation of below-range sentence of 41 months, 24 month sentence imposed); *United States v. Richard Doherty*, 11-CR-10328-DJC (possession of child pornography, guideline range of 97-120 months, government noted defendant had in excess of 10,000 images and could have been charged with distribution but recommended below-range sentence of 33 months, 18 month sentence imposed); *United States v. Christopher E. Reardon*; 11-CR-10325-JLT (possession of child pornography, guideline range of 97-120 months, sentenced to five years of probation); *United States v. Brian Wilkerson*, 09-CR-30013-MAP (receipt of child pornography, guideline range of 78-97 months, sentenced to 60 months mandatory minimum); *United States v. William Noble*, 11-10284-NMG (distribution of child pornography, guideline range of 151-188 months, sentenced to 81 months, "the Court largely discounts [certain] enhancements" to find lower guideline 78-87 months applies); *United States v. Donald Slason*, 11-CR-10108-PBS (possession of child pornography where government agreed to dismiss distribution count, guideline range of 51-63 months and government recommendation of 30 months, sentence of 21 months imposed); *United States v. Timothy S. Kelly*, 10-CR-10291-RGS (receipt of child pornography, guideline sentencing range of 210-262 months, sentenced to mandatory minimum of 60 months jointly recommended by defendant and government); *United States v. Stanley MacKinnon*, 10-CR-10227-RWZ (receipt of child pornography, guideline range of 151-188 months, government below guideline recommendation of 78 months, sentenced to the mandatory minimum 60 months); *United States v. Simeon Stefanidakis*, 10-CR-10174-WGY (distribution of child pornography, guideline range of 151-188, sentenced to 84 months); *United States v. Steven*

*Hooper*, 12-CR-10156-GAO (possession of child pornography, guideline range of 97-120 months, sentenced to 60 months' imprisonment).

Sentences of eight years, the top end of the range agreed to by the parties in the plea agreement, approximate those usually reserved for repeat offenders. *See, e.g., United States v. William Murphy*, 10-10202-MLW (accessing child pornography, guideline range of 151-188, sentenced to second offender mandatory minimum 120 months); *United States v. Larry Heyes*, 11-10048-GAO (second time offender pled guilty to possession of child pornography with a mandatory minimum of ten years, sentenced to ten years); *United States v. Marcus Barici*, 12-10064-GAO (defendant who had previously served a sentence of three years for a child pornography offense sentenced to 120 months).

Disposition in Playpen cases nationwide further support sentencing judge's and, in many cases, the government's reticence to impose sentences beyond the minimum necessary. A survey of cases is set forth in the Appendix to this Memorandum. As the Appendix shows, in many jurisdictions defendants visiting and downloading materials from the Playpen site were permitted to plead to simple possession, thus relieving the defendant and the sentencing court of the specter of the mandatory minimum sentence Anzalone faces here. In any event, the sentences actually imposed rarely exceeded the mandatory minimum sentence recommended here, and when they did it was for conduct and circumstances far more egregious than Anzalone's. *See, e.g., United States v. Phillip A. Epich,* No. 2:15CR00163-PP (E.D. Wis., Aug. 25, 2016), D.E. 18 (indicted with one count of receipt and one count of possession), D.E. 58 (plea to Receipt of CP, over 600 images, and had a 5 level increase for pattern of activity under 2G2.2(b)(5), D.E. 1 (defendant made statements that his wife had confronted him of inappropriate contact with his minor

daughter, and admitted he became sexually aroused when bathing his minor children), D.E. 41-2, on Playpen for 2 hours and 44 minutes), D.E. 68 (sentenced to 72 months).

V.    AN APPROPRIATE SENTENCE

Under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2).  The sentence must 1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; 2) afford adequate deterrence to criminal conduct; 3) protect the public from further crimes of the defendant; and 4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. §3 553(a)(2).  A sentence of 60 months, followed by five years' supervised release achieves those goals.

A five-year prison term is a lengthy sentence that adequately reflects the seriousness of the offense and provides just punishment.  This is Anzalone's first time in jail in his life.  While the crime before this Court is quite serious, and hence deserving of a prison term, his conduct is not dissimilar from other offenders who have received sentences significantly below the guideline sentencing range.  In addition, Anzalone will be on supervised release for at least five years, which, in addition to its purposes of rehabilitation and protection of the public, does constitute additional punishment.

Furthermore, the Court should recognize the collateral consequences of a conviction in factoring the appropriate sentence.  The collateral consequences of a child pornography conviction are extreme, perhaps more extreme in some ways than any other form of criminal activity. Anzalone's career as Computer Systems Administrator, or really any other job for which his technological skills have prepared him, is ended. It is a crime of public shame and

humiliation. It will be that much harder for him to find an apartment, and even to find someone

willing to be in a relationship with him.  He likely will be subject to harassment, and maybe

violence, both in prison and afterwards in the community. He will be shamed for the rest of his

life.  As several courts have recognized, collateral consequences of conviction, such as

registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just

punishment.  *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008)  (overruling

prior holding that it was inappropriate for the district court to consider the lasting effects of being

required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir.

2007) (affirming the district court's finding that the defendant "warranted a lower sentence

because he lost his teaching certificate and his state pension as a result of his conduct," because

"[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the

need for just punishment," and "adequate deterrence"); *United States v. Gardellini*, 545 F.3d

1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that

defendant suffered substantial mental and personal stress as a result of his prosecution).

　　　　With regard to deterrence, the empirical evidence is unanimous that there is no

relationship between sentence length and general or specific deterrence, regardless of the type of

crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis

of Recent Research (1999) (concluding that "correlations between sentence severity and crime

rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do

not provide a basis for inferring that increasing the severity of sentences generally is capable of

enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime

and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not

yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science

panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Jud*ge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").  Even the Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected.  The guidelines' offense level is not intended or designed to predict recidivism."   U.S. Sent'g Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (2004).

Nor does lengthy imprisonment of child pornography possessors have any deterrent or preventive effect on the production or dissemination of child pornography.  This is in part because the production and dissemination of child pornography is a widespread, international problem.  There is no evidence "remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet." *United States v. Beiermann*, 599 F.Supp. 2d 1087, 1103-4 (N.D. Iowa 2009) ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other

case or source that I am aware of").  Likewise, the Commission acknowledges that there is no

social science research supporting the theory that criminal punishments "have affected

commercial or non-commercial 'markets' since the advent of the Internet and P2P file-sharing."

Commission Report, supra, at 98.  To the extent the Court is concerned about sending a message

to the public that this type of crime will be punished severely, the five year mandatory prison

term set by Congress, while it may be a minimum, is hardly a slap on the wrist for a first-time

offender.

As a first time offender, the likelihood of recidivism for Anzalone is low, despite the

"conventional assumption … that the rate of recidivism (in particular, sexual recidivism) by

federal child pornography offenders is high."  Commission Report, supra, at 293.[2]  The

Sentencing Commission's own recidivism study revealed that among child pornography

defendants in criminal history category I, 73.9% did not recidivate.  Id. at 302.  Recidivism for

sexual offenses is even lower.  Id.

Research into the characteristics of internet offenders suggests that those individuals who

have never committed serious, 'hands on' offenses are at low risk to re-offend sexually.  Studies

by Seto (2005), Eke (2010), Wollert (2011), and Lee (2011) all found greatly reduced levels of

recidivism (defined as any sexual offense) when comparing internet sexual offenders to similar

groups with a prior contact offense.  In this research, the recidivism rates of internet offenders

(without contact offenses) ranged from 0-10% over periods from 2-5 years.

---

[2] This notion of high rates of recidivism for people convicted of a sex offense seems to be fueled
more by fear than statistics.  Lawmakers and courts seem obsessed with ensuring lengthy and
almost constant monitoring of sex offenders, more than any other type of offender, because of
the anxiety caused by the fear that the person will abuse a child.

In sum, all empirical evidence in combination with Anzalone's history, circumstances, and age, point to his future law-abidingness. A sentence of five years, after which he will be released on conditions that will be scrupulously monitored by the Probation Department for an additional five years, is sufficient but not greater than necessary to achieve the § 3553(a)'s goals.

## VI.   RESTITUTION

The government did not submit any restitution information to the Probation Department in a timely manner, and thus the final Presentence Report does not include a restitution recommendation. PSR at ¶ 112. Five days ago – on the date the matter was originally scheduled for sentencing and just one week before the rescheduled sentencing hearing - the government submitted a request on behalf of three victims portrayed in the "Sweet Sugar" series for full compensation (totaling close to $300,000) and attorney's fees (in excess of $10,000) . The Court should decline to impose a restitution order in this case for two reasons. First, the government's request is untimely, coming eleven weeks after the deadline directed in the Court's procedural order, almost five weeks after the first disclosure of the Presentence Report, and three weeks after the deadline for objections to the report passed. The government's last-minute request makes a mockery of the orderly consideration of issues the sentencing process under the federal rules demands.

Second, and more important, the government's submission in support of the request is woefully inadequate for the Court to make any kind of reasoned determination of restitution. Restitution is proper under § 2259 "only to the extent the defendant's offense proximately caused a victim's losses." *Paroline v. United States*, 134 S. Ct. 1710, 1722 (2014).  The government bears the burden of proving loss and causation.  *Id.* at 1719.

"The difficulty is in determining the 'full amount' of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Id.*, at 1722. The Court continued:

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying §2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.* at 1715.

> The Court identified information which could weigh in assessing this "relative role":

> These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 1728.

The documents submitted late by government ostensibly to support the "Sweet Sugar" for full compensation for three victims (totaling close to $300,000) and attorney's fees (in excess of $10,000) from Anzalone alone completely ignores *Paroline*. *Paroline* counsels:

> … Congress has not promised victims full and swift restitution at all costs. To be sure, the statute states a strong restitutionary purpose; but that purpose cannot be twisted into a license to hold a defendant liable for an amount drastically out of proportion to his own individual causal relation to the victim's losses.

*Id.* at 1729. *See also United States v. Haynes*, 2014 U.S. App. LEXIS 24809 (6th Cir. Tenn. June 30, 2014) (courts may not apportion restitution by imposing joint and several liability when ordering restitution under § 2259).

Application of the statutory standard, as set out in _Paroline_, is impossible here given the limited materials submitted by the government, particularly given that the materials have been submitted on the eve of sentencing. Courts are not permitted to free-lance. Succinctly stated, _Paroline_ requires a trial court to assess the claims as follows:

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses <u>caused by the continuing traffic</u> in those images but where it is impossible to trace a particular amount of those losses to the individual defendant . . . a court applying § 2259 should order restitution in an amount that comports with the <u>defendant's relative role</u> in the causal process that underlies the victim's general losses.

_Id_. at 1727 [emphasis added].

Thus, a sentencing court must identify "outstanding losses caused by the continued traffic," and then evaluate "defendant's relative role in the causal process that underlies the victim's general losses."  Where the government's submission here is complete bereft of the information necessary to make this determination, there is no basis to enter a restitution order that is faithful to the competing principles victim compensation and that defendant accountability.  _Id._ at 1729. The Court should therefore decline to issue a restitution order.

## **CONCLUSION**

The guidelines in this case provide the Court with little guidance in fashioning a just sentence.  Instead, the Court should look to the panoply of other factors under 18 U.S.C. § 3553(a), particularly his success stopping his compulsive drinking, to find that a sentence of five years followed by five years of supervised release is a sentence that is "sufficient but not greater than necessary" to achieve justice here.  No fine should be imposed. The Court should decline to issue a restitution order because the government has not met its burden to establish a reliable figure.

VINCENT ANZALONE
By his attorney,


/s/ Timothy G. Watkins
Timothy G. Watkins
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061


<u>CERTIFICATE OF SERVICE</u>

     I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 24, 2017.

/s/ Timothy G. Watkins
Timothy G. Watkins